UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ANDRE HARRISON**                                               **CIVIL ACTION**

**VERSUS**                                                       **NO. 06-952**

**CSX TRANSPORTATION, INC.**                                     **SECTION "T" (3)**

Before the Court is Defendant CSX Transportation's Motion for Summary Judgment [Rec. Doc. No. 69].   Oral argument was entertained by the Court on February 13, 2008, and the matter was taken under submission.  The Court, having considered the arguments of the parties, the Court record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule

**I.      BACKGROUND**

Plaintiff worked as a Train and Engineer Service employee for CSX Transportation, Inc. ("CSXT") from 1995 until his termination on February 7, 2005.  Prior to his termination, Mr. Harrison filed a number of Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for racial discrimination.  Specifically, on August 18, 2004, plaintiff filed a charge of discrimination based on his suspension due to absenteeism, which was pending at the time of his termination and subsequent reinstatement period.  His termination is the crucial issues in the instant matter, but his absenteeism, also discussed, was a principal reason for his

termination.

### 1.    Termination

On December 18, 2004, Harrison was riding in a company-provided transport van when he was involved in an altercation with a co-worker, T.B. Finley.  Harrison alleges that Mr. Finley made a sexually suggestive comment regarding Harrison's private life and his reason for leave time under the Family Medical Leave Act.  Harrison admits that he struck Finley with his fist above Finley's right eye, causing his eye to bleed.  Further, he admits that Finley did not touch him and that he "responded improperly" to Finley's comments.

Plaintiff was charged with violating CSXT Operating Rule GR-2, which states that "[a]ll employees must behave in a civil and courteous manner when dealing with…fellow employees. Employees must not enter into altercations while on duty or on company property."  Disciplinary violations by Engineers and Conductors, like Harrison, are governed by the Individual Development & Personal Accountability Policy ("IDPAP"), Operating Rules and the procedures specified in the union contract ("CBA").  Under the IDPAP, a serious single rule violation or offense such as "assault" can warrant dismissal.  After a hearing on January 12, 2005 when plaintiff admitted that he struck Finley, he was found guilty of violating CSXT Operating Rule GR-2, and he was terminated.  Plaintiff admits that his actions constituted grounds for termination, but claims that five white employees have not been fired for fighting.

####    2.        Absenteeism

According to Arthur Walczak, Director of Crew Availability in CSXT's Crew Management Center, computers monitor attendance, sick leave and availability for work for all Train and Engine Service employees such as conductors and locomotive engineers at CSXT.  When an employee fails or refuses to report to work, Crew Management computers automatically report an employee's unavailability.  Crew Management employees review the absences only after the report of employee unavailability is generated to determine if absences are excessive or if there are exceptions under the applicable CBA or whether the absences are protected under the Family and Medical Leave Act. The volume of records generated each day precludes Crew Management employees from having any knowledge of the unavailable employee's race.  Once the report is reviewed, it is forwarded to field management and the employees who did not have exceptions or protected absences are subject to counseling or discipline in accordance with CSXT's progressive discipline procedures.    The supervisors for Train and Engine Service employees are not involved in the automatic monitoring of employee absenteeism.

Prior to January 1, 2003, the absenteeism of Locomotive Engineers was governed by CSXT Operating Rule 500 ("Rule 500"), the CSXT Employee Performance Policy Guidelines ("EPPG"), and the applicable CBA.  If an employee violated Rule 500 by failing to report for duty, he/she was subject to the EPPG, an internal policy governing progressive discipline for being absent from duty or missing calls without permission.  At the First Step the employee received informal coaching and counseling; at the Second Step the employee received formal coaching and counseling, confirmed by a letter; at the Third Step (which was the first step at which suspension could be assessed), the

3

employee received a formal hearing and up to 10 days suspension if found at fault; and at the Fourth Step the employee received a formal hearing and up to 30 days suspension if found at fault.

The EPPG was revised, effective January 1, 2003, and is now referred to as CSXT's Absenteeism Policy. The Absenteeism Policy recommends that a 2-day overhead suspension for 6 months should be given following the first investigation, 5-days actual suspension following the second investigation, and discipline up to dismissal following the third investigation.

Plaintiff was disciplined numerous times for absenteeism and received three separate informal Coaching and Counseling sessions for absenteeism at the First Step of the EPPG in 1998, 1999, and 2001.  Plaintiff went to the Second Step of the EPPG on July 9, 2001 and received a formal Coaching and Counseling session for additional absenteeism. Crew Management then identified that Plaintiff was excessively absent during the period of August 4, 2001 through September 17, 2001, as Plaintiff had marked off sick 63% of the time on Saturdays, Sundays, and Mondays during that time period. This brought plaintiff to the Third Step of the EPPG.  He was charged with violating Rule 500 and given the opportunity for a formal hearing pursuant to the CBA, which was conducted on October 2, 2001.  The hearing resulted in a guilty determination and he was assessed a 10-day suspension in accordance with the EPPG.  On appeal, the suspension was upheld by an arbitrator.

According to Arthur Walczak, plaintiff continued to have problems with absenteeism. On September 21, 2002, plaintiff was given yet another formal coaching and counseling in lieu of a formal hearing.  Thereafter, Crew Management identified that Plaintiff was excessively absent during the period of September 25, 2002 through November 30, 2002.  During that time

period, plaintiff was unavailable for work a little over 50% of the time.  Now at the Fourth Step of the EPPG, he was charged with violating Rule 500 and given the opportunity for a formal hearing pursuant to the CBA.  At the hearing, Plaintiff was found guilty.  Although plaintiff was at the point at which 5-days actual suspension is recommended, he was issued the lighter discipline of a 2-day overhead suspension.

Plaintiff again ran afoul of CSXT's policies on two separate occasions in 2004.  The first took place on May 25, 2004, when plaintiff refused to accept a call to report to work.  At a hearing on June 15, 2004, he was found guilty as charged.  Although he could have been dismissed under the progressive discipline policy set forth in the Absenteeism Policy, he was granted leniency and was issued a 10-day suspension instead.

Five days after his May 25, 2004 violation, plaintiff committed a serious rule violation as defined by CSXT's IDPAP.  On Sunday afternoon, May 30, 2004, plaintiff marked off from working for the rest of that day and a portion of the following day citing a "sickness in the family."  This allowed him to avoid working on Memorial Day.  His actions constituted a violation of company rules because, in April 2004, due to the fact that CSXT's operations had been significantly impacted by the number of employees marking off work as sick on weekends and holidays, a System Notice of Special Instructions ("Special Instructions") was issued, stating that, if any employee with a record of absenteeism marks off due to illness on a Thursday, Friday, Saturday, or Sunday, it will be presumed that the employee marked off under "false pretenses," and he or she will be charged with a serious violation and must be prepared to defend the absence with appropriate proof that the reason for marking off was genuine.  The employee is

5

formally charged and given the opportunity to "clear" him/herself of the charge during the subsequent disciplinary process.  Accordingly, because plaintiff had a substantial record of absenteeism, he was charged in accordance with the Special Instructions.  Plaintiff was offered the opportunity to accept a "time-out," which would allow him to avoid discipline, by simply discussing the incident with his supervisor.  Plaintiff did not accept the time-out and elected to have an investigation, but refused to present any substantiation for his absences.   Following the investigation, he was found guilty and was issued a 5-day suspension.

Plaintiff again does not contest the absence rules or the fact that he violated them. Instead he claims that white employees were treated differently.  Plaintiff listed white employees in his interrogatories that he alleged were treated more favorably with regard to absences, but during his deposition, he admitted that he has no knowledge of whether those employees committed the same type of violations that he committed under CSXT's policies regarding absenteeism.

When questioned as to any other specific white employees he believed to have been treated more leniently, Plaintiff stated that"I can't say for certain, but I can say I have enough records to probably support that there were employees at the same time…that probably had just as much or more unavailability."  In his deposition, plaintiff stated that he provided the work histories of white employees that would establish his allegations.  However, the work histories show only the dates of events and do not address any circumstances that might have been involved and do not indicate whether an employee was disciplined or deserved discipline. Moreover, the employees listed in the work histories did not have the same disciplinary record as

6

plaintiff.

Plaintiff complains that some white employees were not disciplined as harshly because they had absences that were excused/cancelled.  However, the defendant notes that Harrison also had excused absences. Given the sheer volume of employee absenteeism that CSXT must monitor, Walczak stated that there are times when occurrences must be excused/cancelled once they are investigated and information is provided that demonstrates that discipline is not warranted or prohibited under the applicable CBA.  In addition, individual circumstances must be taken into account.  Also, depending on the circumstances, mitigating factors (i.e., documented family or personal health problems, accepting responsibility and waiving the formal hearing process, etc.) may modify the appropriate level of discipline under the policy.  These decisions are made by Crew Management, with no knowledge of the race of the employees involved.

## II.    LAW AND ANALYSIS

### A.    STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) states that summary judgment is the proper remedy if no genuine issue to any material fact exists, and the moving party is entitled to judgment as a matter of law. A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The alleged existence of a factual dispute does not defeat an otherwise properly supported motion.  Therefore, if the evidence is "merely colorable, or is not significantly probative," summary judgment is appropriate.  *Id.*, at 249-50.

7

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-3 (1986). The non-moving party must do more than simply deny the facts and legal claims raised by the moving party. Rather, the party must come forward with competent evidence, such as affidavits or depositions, to challenge the claims. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585-6 (1986). Nevertheless, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

### B.   Time-Barred Claims, Claims Outside the Scope of Plaintiff's EEOC Charges and Harassment Claims

"In order to file suit under Title VII, a plaintiff must first file a charge with the EEOC within 180 days of the alleged discriminatory act. Once the EEOC issues a right-to-sue letter to the party who has filed the EEOC charge, that party has 90 days to file a Title VII action." *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006).

Plaintiff filed four charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") regarding complaints of alleged race discrimination dating back to 2001. Plaintiff's first charge of discrimination concerned his October, 2001 10-day suspension, for which the EEOC issued a Dismissal and Notice of Rights to Plaintiff on February 27, 2003. Plaintiff's second charge of discrimination concerned his 2-day overhead suspension in December of 2002, for which the EEOC issued a Dismissal and Notice of Rights on September 2, 2003. Plaintiff filed the present action on February 27, 2006. The defendant argues, and the plaintiff fails to address in his opposition, that the disciplinary actions that were the subject of Plaintiff's first two charges of

8

discrimination are clearly time-barred under Title VII, as Plaintiff did not file suit within 90 days of receiving either of his first two notices of right to sue.  The Court agrees and holds finds that summary judgment is proper with respect to those claims.

In addition, the Complaint is void of any allegations regarding the alleged disparate treatment, comments, graffiti and vandalism mentioned in plaintiff's deposition.  Discrimination claims in civil actions will be limited to those issues within the scope of the administrative investigation which grows, or which could reasonably be expected to grow, out of the administrative charge of discrimination.  *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970). Plaintiff's additional allegations are not sufficiently "like or related to" his charges of discrimination such that an investigation "could reasonably be expected to grow from it."  *See Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 450 (5th Cir. 1983).  Therefore, this Court cannot consider such claims, and finds that plaintiff's claims that fall outside the scope of his charges of discrimination and Complaint must be dismissed.

### C.      Disparate Treatment and Retaliation Claims

Plaintiff has no direct evidence of discrimination or retaliation by CSXT and must, therefore, prove his claims by using the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  For the reasons stated below, plaintiff cannot do so.

### 1.      Plaintiff cannot establish a *prima facie* case of race discrimination.

To establish a prima facie case of race discrimination, Plaintiff must prove that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was subjected to an

9

adverse employment action; and (4) was replaced by someone outside the protected class, or in the case of disparate treatment, shows that others similarly situated were treated more favorably. *Okoye v. University of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).   The Court finds in this matter at hand that the plaintiff cannot establish that he was qualified for his position or that CSXT treated similarly situated white employees more favorably and, as such, has failed to state a prima facie case of race discrimination.

First, plaintiff cannot establish that he was qualified for his position because of his excessive absenteeism and because of his assault on his co-worker.[1]  *See Jones v. Priscilla Blanchard*, 1993 U.S. App. LEXIS 19385 at * 8 (6th Cir. July 16, 1993) (finding the plaintiff failed to establish a *prima facie* case because he was not qualified for his position as a result of his "prolonged inability to come to work…on a regular basis").

Nor can Plaintiff establish the fourth prong of the *prima facie* case, as he has no evidence that any similarly situated white employee was treated more favorably. "To demonstrate disparate treatment, a plaintiff must demonstrate that a 'similarly situated' employee under 'nearly identical' circumstances was treated differently." *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005), *quoting Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995); *see also Mayberry*, 55 F.3d at 1090 (records of infractions are not evidence of disparate treatment because they do not include information about the work history of the employee committing each infraction or the severity of the infraction).   Courts of the 5th Circuit have

_____

[1]While plaintiff was never terminated for any missed call violations, his excessive absenteeism is well documented.

deemed "nearly identical" to mean that the alleged comparators: 1) have violated the same rule as the plaintiff; 2) have "nearly identical employment histories" with regard to discipline; 3) have a comparable level or seriousness of the offense; 4) have the same level of jobs; 5) work in the same department; and/or 6) have the same supervisor and/or decision makers.

With regard to his termination, plaintiff attempts to compare his incident with Finley with situations involving other employees of CSXT. First, plaintiff argues that his incident is comparable with an incident involving Ted Abston and Virgil Raltson in 1999. According to Matthew Charron, CSXT manager of EEO and diversity, the altercation between Abston and Ralston was a verbal one; "neither one struck the other." While plaintiff puts forth Ralston's self-serving and conclusory affidavit stating that Abston pushed him against a wall and injured his neck, plaintiff admits that there is no record of this alleged incident. Therefore, the Court finds that the Abston/Ralston incident is not comparable.

Plaintiff also contends that his incident is comparable with an incident involving Mr. Richeson and Mr. Reynolds. Richeson was involved in a heated discussion with Reynolds in 2003. Witnesses testified that the only physical contact was Richeson touching Reynolds on the chest or shoulder three times with the flat back of his hand. Witnesses described the touching as a "pat," and Reynolds testified that he did not believe that Richeson intended to hurt him. After consideration of all the witness testimony, CSXT did not find that the incident between Richeson and Reynolds warranted dismissal, and he was assessed a 30-day suspension.[2] This Court agrees

---

[2]Richeson ended up being terminated in 2005 for an incident that is similar to Plaintiff's when he grabbed another employee by the lower jaw and shook him roughly. Plaintiff admits that he has no personal knowledge of these incidents.

with the defendants' contention that the Richeson/Reynolds incident is not comparable because the nature of Richeson's touching of Reynolds, with no intent to injure, was not the same as where plaintiff intentionally hit Finley in the face causing his eye to bleed.

Further, plaintiff has no evidence of similarly situated white employees being treated differently as to absences. Instead, he relies on his own conclusory belief that white employees have received more lenient treatment for their absences. Even where he identifies a person, plaintiff cannot show 1) whether the employee was in fact disciplined for such absence or unavailability, 2) the employees' level of discipline at the time of the absence or unavailability, or 3) whether the employees' absence or unavailability was excused as a result of any mitigating factors or circumstances. Plaintiff's assumptions and guesses are not enough. Each individual that plaintiff has identified were not at the same level in the progressive discipline policy; and therefore, they are not proper comparators. *Nieto v. L&H Packing Co.*, 108 F.3d 621, 623 (5th Cir. 1997) (the alleged comparator was not similarly situated because it was not the same offense and the comparator did not have a prior disciplinary record); *Mayberry*, 55 F.3d at 1090 (the alleged comparators were not similarly situated because they did not have the same history of poor work performance as the plaintiff and the costs of the damaged parts were not at the same level; and therefore, had not reached the same place in the progressive discipline program); *Brown v. Vanderbilt Catholic High Sch.*, 2007 WL 162817 at *3 (E.D. La. Jan. 17, 2007) (because of plaintiff's prior discipline, the alleged comparator did not have a "nearly identical" employment history).

Because plaintiff has failed to establish the second and fourth prongs of the *prima facie* case, the Court finds that CSXT is entitled to summary judgment on plaintiff's disparate treatment claims.

**2.      Plaintiff cannot establish a *prima facie* case of retaliation.**

A plaintiff bringing a retaliation claim must establish the three elements of a *prima facie* case: "(1) that he is engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action." *Pineda v United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004).  It is undisputed that plaintiff engaged in protected activity and suffered adverse employment actions.  What is in dispute is whether he can establish that a causal link existed between the protected activity and the adverse action.  While a causal connection may be inferred from evidence that the protected conduct was closely followed by the adverse employment action, some courts have held that "the temporal proximity must be 'very close'." Clark Co. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001). *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient) and *Huges v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient).  The Fifth Circuit has stated

that "consideration of the time lapse is something for us to consider but is not itself determinative

of retaliation."  *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 33 (5th Cir. 1992).

In this case, plaintiff's last charge of discrimination before his termination was filed on August 19, 2004, and he was not terminated until February 7, 2005, a period of five months.[3]  In

---

[3]The parties' briefing exhibits some discrepancies regarding the actual date of plaintiff's termination. Plaintiff's Complaint, p. 3, ¶ 18, states that on "February 7, 2005, CSX sent a letter that they determined Mr. Harrison was guilty of violating rule GR-2 and dismissed him from CSX effective immediately."

addition, the incident between he and Finley occurred between the filing of the charge of discrimination and the decision to terminate him.  Taking into consideration the time lapse between the charge and the termination and the fact that the incident between Harrison and Finley occurred in the interim, this Court finds that any causal link that possibly existed between the protected activity and the adverse action was broken and, as such, plaintiff cannot state a *prima facie* case of retaliation.

> **3.      Plaintiff cannot establish that CSXT's legitimate non-discriminatory, non-retaliatory reasons are pretext.**

With regard to his discipline for absenteeism, Plaintiff admits that CSXT has certain procedures in place that have different consequences for infractions based upon the stages of the disciplinary process.  CSXT's automatic computer generated reports of employee unavailability leave no room for improper motivations.  This Court finds that plaintiff simply refused to follow CSXT's policies and procedures regarding work availability and he was disciplined accordingly.

CSXT maintains that with regard to plaintiff's termination, there was no room for leniency. Plaintiff admits he struck another employee, which was in direct violation of CSXT policies. Accordingly, he was terminated, an action upheld by an arbitrator.

The defendant submits, and this Court agrees, that the plaintiff can provide only his subjective beliefs as evidence of pretext, which is insufficient to establish an inference of discrimination or retaliation.  First, with regard to his discipline for absenteeism, plaintiff believes that there were white employees who were treated more favorably.  However, this Court has determined that plaintiff cannot show that any of the employees about which he complains were at the same step as he in the disciplinary process or what was the result of any alleged violation (i.e.

whether the employees were disciplined and how or whether there were mitigating factors).

When asked about whether he believed anyone in Crew Management discriminated or retaliated against him with regard to his absenteeism, plaintiff admitted that he did not know the people in Crew Management and that he did not know of anything that would indicate a bias against him. It is Crew Management computers that issue the reports of unavailability and pattern lay-offs of employees.  As a result, the Court finds that plaintiff's race or prior charges could not have been a factor in the generation of those reports by Crew Management computers.

With regard to the assessment of his discipline for absenteeism, plaintiff believes that Alan Snapp, former Terminal Manager, discriminated against him because when Plaintiff allegedly complained about his discipline, Snapp told him that the white employees plaintiff identified were at a different level of the discipline process.  This statement does not establish race discrimination, and plaintiff admits that he never heard Snapp make any racial comments.  Moreover, he has no evidence Snapp was involved in his absences discipline.

Further, plaintiff believes that Jimmy Black, former Trainmaster, had discriminatory animus against him, but has no facts to support his belief.  Plaintiff also believes Jason Tipton, Terminal Manager, discriminated against him because Tipton came to his house to make him work during a hurricane.  The only basis for Plaintiff to connect this to race was that he believed that Tipton did not go to a white employee's house.  Plaintiff also alleges that Tipton failed to discipline an employee that plaintiff reported as having beer in a cooler in his truck, but admits that he has no knowledge of whether the employee was disciplined as a result of his report, and no negative action was taken against Plaintiff for making the report.  Further, plaintiff admits that even if the employee

was not disciplined, plaintiff does not know if it was because the employee was white or because Tipton was close friends with the employee.  Lastly, plaintiff alleges that Tipton required him to bring in doctors' certificates to substantiate his absences, but he admits that during that time period, August through September of 2001, he had marked-off work 63% of the time on weekends.  None of these events indicate racial bias or improper motive.

With regard to his termination, plaintiff admitted that he does not know if W.E. McClellan, former Manager Safety and Operating Practices who conducted the investigation into his physical assault on Finley, made any decisions with regard to his employment for improper reasons.  In addition, plaintiff admitted that he had no knowledge of Gil Kovar, the former Division Manager, who signed off on plaintiff's discipline, saying or doing anything that would indicate he had a bias against plaintiff.

None of the allegations set forth above demonstrate that there was any racial or retaliatory animus toward plaintiff.  Plaintiff may believe that it was unfair for him to be disciplined for his absenteeism or to not receive a leniency reinstatement after being terminated for hitting Finley; however, "Title VII and Section 1981 do not protect against unfair business decisions[,] only against decisions motivated by unlawful animus." *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1257 (5th Cir. 1977), *abrogated in part on other grounds*, *Burdine v. Tex. Dept. of Comm. Aff.*, 647 F.2d 513 (5th Cir. 1981); *see also Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997) (quoting Turner and stating that the quoted provision "has long been the law" in the Fifth Circuit).  "There is no automatic presumption that every…personnel action directed at a black employee…results in a Title VII violation." *Saunders v. Stone* , 758 F. Supp. 1143, 1148 (E.D. Va. 1991).[1]

Plaintiff relies only upon his conclusory allegations to support his claim. However, a plaintiff's personal belief is simply insufficient to carry his burden. At the summary judgment stage, plaintiff has the burden of proferring evidence that the employer's stated nondiscriminatory reasons are false. *Memberu v. Allright Parking Sys., Inc.*, 93 Fed. Appx. 603, 609-10 (5th Cir. 2004). Indeed, the ultimate determination in an unlawful retaliation case is whether the protected activity was a "but for" cause of the adverse employment action. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). Conclusory statements, speculation, and unsubstantiated assertions are insufficient to meet this burden at the summary judgment stage. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345-46 (5th Cir. 2007); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). In determining whether CSXT's stated reasons are pretextual, its explanations may not be disregarded without sufficient countervailing evidence. *EEOC v. Louisiana Office of Community Servs.*, 47 F.3d 1438, 1443-44 (5th Cir. 1995). Plaintiff should not be allowed to rely on hearsay and his own subjective beliefs to establish pretext. There is no evidence whatsoever that any decision-maker at CSXT held any racial or retaliatory animus towards Plaintiff.

Plaintiff has failed to present any evidence that CSXT's legitimate non-discriminatory reasons for decisions regarding his employment are pretext for race discrimination or retaliation. In addition, plaintiff failed to address defendant's argument that he cannot establish that CSXT's reasons for its action are pretext for discrimination or retaliation. As the Court finds defendant's arguments to have merit, CSXT is entitled to summary judgment on plaintiff's claims.

For the foregoing reasons, this Court finds that the plaintiff, Andre Harrison, has produced

17

no evidence that CSXT discriminated against him or subjected him to any harassment on the basis of his race.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment, filed on behalf of CSX Transportation [Rec. Doc. 69] is hereby **GRANTED**.

New Orleans, Louisiana, this 30th day of April, 2008.

**G. THOMAS PORTEOUS, JR.**
**UNITED STATES DISTRICT JUDGE**